UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ERIC EDWARDS,                 :
                              :
               Petitioner,    :
                              :        07 Civ. 9262 (VM)
     - against -              :
                              :        **DECISION AND**
LOUIS R. MARSHALL,            :        **AMENDED ORDER**
Superintendent               :
               Respondent.  :
------------------------------X
**VICTOR MARRERO, United States District Judge.**

     Pro se petitioner Eric Edwards ("Edwards"), who is
currently incarcerated at Sing Sing Correctional Facility in
New York ("Sing Sing"), seeks a writ of habeas corpus pursuant
to 28 U.S.C. § 2254 ("§ 2254").  Edwards was convicted in New
York State Supreme Court, New York County (the "Trial Court")
of Assault in the First Degree, in violation of New York Penal
Law § 120.10(1).  The Trial Court imposed upon Edwards a
sentence of a determinate prison term of twenty-five years,
which was later reduced by the Appellate Division, First
Department to a determinate prison term of fifteen years.
Respondent Louis R. Marshall (the "State") is Superintendent
of Sing Sing.

     In his petition, Edwards asserts four grounds as bases
for habeas relief.[1]  First, Edwards claims his waiver of

---

[1] In their submissions to the Court, the parties have varied in their
characterizations and groupings of Edwards's grounds for relief.  The
Court views Edwards's claims as the four distinct grounds listed here.

immunity before the Grand Jury was invalid, and, to the extent the issue was not properly preserved, that he was denied effective assistance of trial counsel. Second, Edwards alleges that the Trial Court violated his due process and Confrontation Clause rights to present a defense because, at trial, he was precluded from presenting evidence suggesting witness bias and third-party culpability. Third, Edwards claims that the Trial Court improperly permitted an unduly suggestive in-court identification procedure. Fourth, Edwards argues that his sentence should be further reduced in the interest of justice. By Order dated September 23, 2008 the Court denied Edwards's petition and indicated that its findings, reasoning, and conclusions would be set forth in a subsequent Decision and Order. Accordingly, for the reasons stated below, Edwards's petition is DENIED.

## I. <u>BACKGROUND</u>

A.   <u>FACTUAL SUMMARY AND PROCEDURAL HISTORY</u>[2]

---

[2] The factual and procedural summary is derived primarily from the following documents: The <u>Wade</u>-<u>Dunaway</u> Hearing Transcript (Supreme Court of New York, Part 68, Oct. 4, 2001) ("<u>Wade-Dunaway</u> Tr."); the Pre-Trial and Trial Transcript (Supreme Court of New York, Part 68, Oct. 9, 2001 - Oct. 11, 2001) ("Trial Tr.,"); the Sentencing Transcript (Supreme Court of New York, Part 68, Oct. 31, 2001) ("Sent. Tr."); and the submissions of the parties to this Court and exhibits attached thereto, including: Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated September 21, 2007 ("Petition"); Letter Requesting to Supplement § 2254 Application, dated December 26, 2007 ("Supp."); Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated May 2, 2008 ("Resp't's Mem."); Petitioner's Traverse Opposition, dated August 30, 2008 ("Trav."). Except where specifically referenced, no further citation to these sources will be made.

1.   <u>The May 15, 2000 Assault</u>

In May 2000, Joseph McMillan ("McMillan") lived with his mother, Cora Kairson ("Kairson"), in a Manhattan apartment building on West 149th Street.  On the afternoon of May 15, 2000, McMillan was in the garden of his building courtyard when Edwards rushed up and attacked him, using the metal nozzle of a garden hose to beat McMillan about the face and eyes, ultimately leaving McMillan with severely reduced vision.[3]  Kairson witnessed the attack from the window of their third-floor apartment and called 911.  The police responded and an ambulance took McMillan to Harlem Hospital. At the hospital, Detective Kenneth Vandermolen ("Vandormolen") and Police Officer Gerard Blake ("Blake") interviewed McMillan about the attack and the characteristics of his assailant.  On May 18, 2000, Blake presented McMillan with a photo array, where McMillan identified Edwards as his assailant.

On August 2, 2000, Blake located Edwards, who voluntarily accompanied him to the stationhouse, where Edwards participated in a lineup.  McMillan viewed the lineup in the early hours of August 3, 2000, and though his vision had continued to deteriorate as a result of his injuries, he positively identified Edwards as his assailant.

---

[3] A man accompanied Edwards into the courtyard and stood by as Edwards beat McMillan with the metal nozzle, but the record does not indicate the identity of Edwards's companion.

2.   <u>The Grand Jury</u>

Edwards appeared before the Grand Jury on February 6, 2001.  Prior to entering the Grand Jury chamber, Edwards signed a waiver of immunity in the presence of his attorney. Edwards then entered the Grand Jury chamber accompanied by his attorney, where Edwards was advised of his rights and was offered additional time to consult with his attorney, which he declined.  Edwards then stated under oath before the Grand Jury that he had read the waiver of immunity form, that he had signed the waiver, that it was his signature that appeared on the waiver, and that the statements on the waiver form, to which he attached his signature, were true.

After his appearance before the Grand Jury, Edwards was charged with Assault in the First Degree.  The Trial Court held a <u>Wade</u>[4]-<u>Dunaway</u>[5] hearing on October 4, 2001, where Edwards's suppression motion was denied.

3.   <u>Motions in Limine</u>

Prior to the start of trial, the prosecutor moved to preclude Edwards from eliciting facts and testimony about: (1)

---

[4] A pre-trial <u>Wade</u> hearing is held to determine whether a pre-trial identification of a defendant has an independent basis of reliability and is thus admissible at trial to determine the guilt or innocence of the accused.  <u>See</u> <u>generally</u> <u>United States v. Wade</u>, 388 U.S. 218 (1967).

[5] A <u>Dunaway</u> hearing is held to decide the admissibility of a confession following an arrest.  <u>See</u> <u>generally</u> <u>Dunaway v. New York</u>, 442 U.S. 200 (1979).

McMillan's arrest and subsequent adjournment in contemplation of dismissal ("ACD") for allegedly threatening Edwards's sister with a shotgun just minutes before the assault on McMillan on May 15, 2000; and (2) the police's recovery of an unloaded shotgun from McMillan's apartment.  Edwards opposed the motion, arguing that such evidence was relevant because it would tend to establish bias and a motive for McMillan to frame Edwards.  The Trial Court ruled that Edwards could ask McMillan if he had menaced Edwards's sister; however, if McMillan denied such an act, Edwards could not ask follow-up questions on that topic, nor introduce the facts that McMillan was arrested or owned a gun.

In addition, Edwards asked the Trial Court for permission to cross-examine McMillan about a separate assault on McMillan that occurred on July 10, 2001, which Edwards claimed was evidence that McMillan had other enemies who could have perpetrated the May 15, 2000 attack.  The Trial Court ruled that Edwards could not make such inquiries.

4.  <u>The In-Court Identification</u>

Edwards's trial commenced before a jury on October 10, 2001.  At one point during the trial, when McMillan was called as a witness, and over defense counsel's objection, the Trial Court permitted McMillan to make an in-court identification of his assailant.  The court officer announced Edwards by name

-5-

and brought him within six inches of McMillan's face. McMillan, who still had limited eyesight, and who was still suffering from injuries associated with the July 10, 2001 attack, identified Edwards as his assailant.

The jury found Edwards guilty of Assault in the First Degree, and he was sentenced by the Trial Court on October 31, 2001 to a determinate prison term of twenty-five years.

### 5.   Edwards's § 440.10 Motion

Edwards filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that he did not sign a waiver of immunity in the presence of the Grand Jury prior to testifying, as required by CPL § 190.45(2), and therefore that his waiver of immunity was invalid and he was immune from prosecution.  The Trial Court ruled that Edwards's unjustifiable failure to file, take, or perfect a timely appeal required it to summarily deny his motion to vacate.  In the alternative, the Court held that the procedures followed with respect to Edwards's waiver of immunity before the Grand Jury were in compliance with CPL § 190.45(2).  Edwards sought leave to appeal the denial of his CPL § 440.10 motion, and by certificate dated December 16, 2002, the Appellate Division, First Department (the "Appellate Division"), denied Edwards's application for leave to appeal.

        6.   Edwards's Direct Appeal of His Conviction

_____On direct appeal of his conviction to the New York Appellate Division, Edwards made four arguments.  First, he claimed that he was immune from prosecution because he did not sign the waiver of immunity before the Grand Jury as required by CPL § 190.45(2), and to the extent that trial counsel failed to preserve this issue, Edwards was denied effective assistance of counsel.  Second, Edwards claimed that the Trial Court violated his due process rights to confrontation and to present a defense by preventing him from introducing evidence and questioning witnesses regarding: (1) McMillan's arrest and ACD for threatening Edwards's sister with a shotgun and the recovery by the police of McMillan's shotgun, which tended to establish bias and a motive for McMillan to frame Edwards; and (2) the July 10, 2001 assault on McMillan, which could suggest that McMillan had other enemies who could have committed the May 15, 2000 assault.  Third, Edwards claimed that the Trial Court improperly permitted an unduly suggestive in-court identification procedure.  Fourth, Edwards claimed that his sentence was excessive and should be reduced in the interest of justice.

        On February 15, 2007, the Appellate Division unanimously modified the judgment, as a matter of discretion in the interest of justice, by reducing Edwards's sentence from

twenty-five years to fifteen years, but otherwise affirmed the judgment.  <u>People v. Edwards</u>, 829 N.Y.S.2d 503 (App. Div. 1st Dep't 2007).

The Appellate Division declined to review Edwards's claim of invalid waiver of immunity because he did not properly preserve this claim.  <u>Id.</u> at 504.  In the alternative, the Appellate Division stated that if it were to review the claim, it would reject it, because the statutory requirement that a waiver be sworn to before the Grand Jury was satisfied when Edwards acknowledged, under oath in the presence of the Grand Jury, that it was his signature appearing on the waiver.  Accordingly, the Appellate Division found that trial counsel's failure to preserve this claim did not deprive Edwards of effective assistance of counsel.  <u>Id.</u> at 504-05.  The Appellate Division also held that though the Trial Court had "improvidently precluded extrinsic evidence concerning a menacing incident involving the defendant's sister, which was offered as evidence of bias," this error was harmless.  <u>Id.</u> at 505.  Regarding Edwards's other contentions of improper evidentiary rulings, the Appellate Division found that "[w]ere we to find error in those rulings, we would deem them harmless."  <u>Id.</u>  Finally, the Appellate Division found that the Trial Court's in-court identification procedure did not

prejudice Edwards, particularly because McMillan previously had made "a reliable lineup identification." Id.

On June 6, 2007, the New York Court of Appeals denied Edwards's leave to appeal. People v. Edwards, 872 N.E.2d 882 (N.Y. 2007). Edwards filed the instant action in federal court on October 16, 2007.

B.   EDWARDS'S HABEAS CORPUS PETITION

Edwards asserts four claims in the instant petition, essentially mirroring those he presented to the Appellate Division.  First, Edwards claims that his waiver of immunity was invalid because he did not sign the waiver in the presence of the Grand Jury (the "Invalid Waiver Claim").  He argues that CPL § 190.45(2) requires that a waiver of immunity be both signed and sworn to in the presence of the Grand Jury, and that his signing of the waiver outside the Grand Jury room, and subsequent swearing before the Grand Jury that he had signed the waiver, did not satisfy the requirements of the statute.  Edwards further asserts that the failure of his trial counsel to file a motion to dismiss the indictment on the grounds of an invalid waiver of immunity constituted ineffective assistance of counsel.  The State counters that the Appellate Division's holding that Edwards did not preserve this claim, and therefore waived immunity, constitutes an adequate and independent state ground for dismissing the

-9-

Invalid Waiver Claim.  The State also argues that the Invalid Waiver Claim is not cognizable on federal habeas review because compliance with CPL § 190.45(2) is solely a state-law issue.  Finally, the State asserts that Edwards's ineffective assistance of counsel claim is without merit because the failure of an attorney to advance a meritless claim cannot constitute ineffective assistance.

Second, Edwards claims that his due process and Confrontation Clause rights to confront witnesses and present a defense were violated by the Trial Court's refusal to permit him to question McMillan regarding witness bias and possible third-party culpability.  Edwards asserts that had he been permitted to present extrinsic evidence and question McMillan with respect to an incident in which McMillan allegedly menaced Edwards's sister with a shotgun just prior to the attack, he could have demonstrated bias and a motive on the part of McMillan to accuse Edwards of assault (the "Bias Claim").  Additionally, Edwards argues that the Trial Court's ruling preventing him from presenting evidence and questioning McMillan regarding the July 10, 2001 attack on McMillan improperly denied Edwards the opportunity to demonstrate possible third-party culpability (the "Third-Party Culpability

Claim").[6]   The State argues that the Appellate Division's finding of harmless error for the preclusion of evidence concerning the Bias Claim was proper, and therefore not a basis for habeas relief.  Additionally, the State argues that the Appellate Division's holding that the Trial Court's ruling on evidence concerning the Third-Party Culpability Claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

Third, Edwards argues that the in-court identification procedure used by the Trial Court violated his due process right to a fair trial.  The Trial Court permitted Edwards to be brought within six inches of McMillan following the announcement of Edwards's name, whereupon McMillan, who had limited eyesight, identified Edwards as his assailant. Edwards maintains that this procedure was unduly suggestive. The State counters that the Supreme Court has not addressed the circumstances in which an in-court identification procedure should be deemed unduly suggestive, and therefore it is not possible that the Appellate Division's rejection of Edwards's claim was contrary to, or an unreasonable application of, clearly established Supreme Court law.

---

[6] To the extent that Edwards presents other constitutional claims regarding the denial of his due process rights to a fair trial and to present a defense, these claims were not raised on appeal.  They are therefore unexhausted and not cognizable grounds for habeas relief.

Finally, Edwards argues that his sentence was excessive and should be reduced in the interest of justice.  The State counters that Edwards's excessive sentence claim is unexhausted and not cognizable on federal habeas review.

## II. <u>DISCUSSION</u>

A.   <u>STANDARD OF REVIEW</u>

As an initial matter, the Court is mindful that Edwards is proceeding <u>pro se</u>, and that his submissions should thus be held to "'less stringent standards than formal pleadings drafted by lawyers.'"  <u>Ferran v. Town of Nassau</u>, 11 F.3d 21, 22 (2d Cir. 1993) (<u>quoting</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980)).  Moreover, when a plaintiff brings a case <u>pro se</u>, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (quotations omitted).  Still, <u>pro se</u> status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  <u>Boddie v. New York State Div. of Parole</u>, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (<u>quoting</u> <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983)).

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates "the Constitution or [federal]

-12-

laws or treaties of the United States." § 2254(a). Pursuant to the various subsections of § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, this Court's review is limited by certain restrictions on the nature and extent of review that a federal court may conduct in considering a habeas petition. Under § 2254, if a state court adjudicates a petitioner's federal claim on the merits, a federal court on habeas corpus review must defer to the state court's determination of that claim unless such adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court adjudicates a petitioner's federal claim "on the merits," and thus triggers the highly-deferential AEDPA standard of review, when it: (1) disposes of the claim on the merits; and (2) reduces its disposition to judgment. See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). In so doing, the state court need not explicitly refer to either the particular federal claim or to any federal case law. See id. The only requirement is that the claim be finally

-13-

resolved, with <u>res judicata</u> effect, on substantive rather than procedural grounds.  <u>See</u> <u>id.</u> at 311.

If the state court's adjudication of a petitioner's federal claim is not based on the merits — for example, when the decision rests solely on procedural grounds — the state court's decision on that claim is entitled to no deference. Instead, the federal court must apply a pre-AEDPA <u>de</u> <u>novo</u> review to the state court's disposition of the federal claim. <u>See</u> <u>Cotto v. Herbert</u>, 331 F.3d 217, 230 (2d Cir. 2003) (<u>citing</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 93 (2d Cir. 2001)).

B.    <u>TIMELINESS</u>

Under 28 U.S.C. § 2244(d)(1), a one-year limitation period applies to the filing of petitions by state prisoners seeking federal habeas corpus review.  This period runs from the date on which a petitioner's conviction becomes final on direct review, or the expiration of time to seek appeal.  <u>See</u> <u>id.</u>

In the instant case, Edwards's limitation period began running on September 5, 2007, the date his time expired to seek a writ of certiorari to the United States Supreme Court challenging the ruling of the Court of Appeals affirming his conviction.  The State has not disputed the timeliness of Edwards's habeas petition, which was filed in the <u>Pro Se</u>

Office of this Court on September 24, 2007, within the one-year limitation period.

C.   <u>EXHAUSTION</u>

A petition for habeas corpus may not be brought in federal court unless the petitioner first has either exhausted the remedies available in state court or demonstrated the absence of an effective state remedy.   <u>See</u> <u>Fama v. Commissioner of Corr. Servs.</u>, 235 F.3d 804, 808 (2d Cir. 2000) (<u>citing</u> § 2254(b)(1)).   A petitioner has exhausted a claim in state court when he has "'fairly presented' each federal claim to the highest state court."   <u>Id.</u> (<u>quoting</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)).   "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'"   <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. 1997) (<u>quoting</u> <u>Daye v. Attorney Gen. of N.Y.</u>, 696 F.2d 186, 191 (2d Cir. 1982)).   The claim raised in the federal habeas petition, in other words, must be the "substantial equivalent" of the claim presented to state court.   <u>Strogov v. Attorney Gen. of N.Y.</u>, 191 F.3d 188, 191 (2d Cir. 1999) (<u>quoting</u> <u>Picard</u>, 404 U.S. at 278).

D.   <u>APPLICATION</u>

   1.   <u>Invalid Waiver and Ineffective Assistance of Counsel</u>

     Edwards argues that his waiver of immunity before the Grand Jury did not comply with CPL § 190.45(2) and was therefore invalid.  He further maintains that he was denied effective assistance of counsel to the extent that this issue was not preserved.  The Court disagrees.

     The "independent and adequate state ground doctrine" precludes a federal habeas court from considering a claim that was not reviewed by the state court because the petitioner failed to meet a state procedural requirement.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).  Where a petitioner fails to comply with state procedural rules, his claim is procedurally defaulted and is not cognizable on habeas review.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977).

     Federal courts, however, recognize three exceptions to the independent and adequate state ground doctrine.  First, a procedural bar will be presumed to constitute an independent and adequate state ground to deny habeas relief only in cases where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar."  <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989) (internal quotations omitted); <u>see also</u> <u>Levine v.</u>

Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).
Second, an exception is available "if the petitioner
demonstrates both good cause for and actual prejudice
resulting from his noncompliance with the state's procedural
rule." Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999)
(citing Engle v. Isaac, 456 U.S. 107, 129 (1982)).[7] Finally,
a federal habeas court may consider the claim where the
failure to do so will "result in a fundamental miscarriage of
justice." Coleman, 501 U.S. at 750. In order to excuse a
procedural default under the "miscarriage of justice"
exception, a petitioner must show through "new reliable
evidence" that "in light of the new evidence, it is more
likely than not that no reasonable juror would have found him
guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S.
298, 299 (1995).

    None of the exceptions to the independent and adequate
state ground doctrine applies here. First, the Appellate
Division explicitly found that Edwards "did not preserve his
claim that since he signed his waiver of immunity outside the
presence of the grand jury, he therefore received immunity,"

---

[7] In this context, "cause" is defined as "'some objective factor, external
to the defense [that] impeded counsel's efforts' to raise the claim in
state court," McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray,
477 U.S. at 488), and "actual prejudice" is defined as "actual and
substantial disadvantage, infecting [the defendant's] entire trial with
error of constitutional dimensions," United States v. Frady, 456 U.S. 152,
170 (1982) (emphasis in original).

and it declined to review this claim.  Edwards, 829 N.Y.S.2d at 504.  Because an "explicit invocation of the procedural bar" constitutes an adequate state ground upon which a claim is procedurally defaulted, the first exception does not apply. See Garcia, 188 F.3d at 77.  Moreover, the Appellate Division's alternative rejection of this claim on the merits does not preclude dismissal on procedural grounds.  See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

Second, Edwards cannot demonstrate either good cause for, or actual prejudice resulting from, his failure to preserve the Invalid Wavier Claim.  Edwards has not asserted, and the record does not reflect, any factor that impeded him from preserving this claim.  Additionally, Edwards's claim of ineffective assistance of counsel does not constitute "cause," as discussed more fully below.  Because Edwards is unable to show "cause," the Court need not consider whether "actual prejudice" has resulted.  See McClesky, 499 U.S. at 501 (where

petitioner is unable to show cause, a court need not consider actual prejudice).[8]

Finally, Edwards offers no demonstration that the failure to consider the defaulted Invalid Waiver Claim will result in a "miscarriage of justice," as the claim is meritless.

In addition, Edwards's ineffective assistance of counsel claim is without merit. To prove ineffective assistance of counsel, Edwards must show that: (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) a reasonable probability existed that, but for counsel's deficient performance, the outcome of the trial would have been different or that the defect in counsel's performance deprived Edwards of a trial whose result is reliable. See Strickland v. Washington, 466 U.S. 668 (1984). An attorney cannot be charged with ineffective assistance for failure to advance a meritless claim. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995); Quail v. Farrell, 550 F. Supp. 2d 470, 476 (S.D.N.Y. 2008).

The Appellate Division ruled that even if it had reviewed the Invalid Waiver Claim on the merits, it would have rejected

---

[8] Though the Court is not required to address whether "actual prejudice" exists in this case, the Court notes that no "actual prejudice" resulted from Edwards failure to preserve the claim because the Appellate Division alternatively rejected the Invalid Waiver Claim on the merits, finding the statutory waiver requirement had been satisfied.

-19-

the claim.  See Edwards, 829 N.Y.S.2d at 504.  The claim was meritless because, as the Appellate Division held as a matter of state law, the requirements of CPL § 190.45(2) that a wavier of immunity be signed and sworn to before the Grand Jury were satisfied when Edwards, in the presence of the Grand Jury, was placed under oath and acknowledged that it was his signature appearing on the waiver.  Id.  Therefore, Edwards's attorney's failure to preserve this meritless claim did not deny Edwards effective assistance of counsel.

    2.  Violation of Due Process and Confrontation Clause Rights

Edwards also claims that his due process and Confrontation Clause rights to present a defense were violated when the Trial Court prevented him from questioning McMillan about incidents suggesting witness bias and possible third-party culpability.  Regarding the Bias Claim, Edwards argues that he should have been permitted to introduce extrinsic evidence concerning an incident in which McMillan allegedly threatened Edwards's sister with a gun.  Regarding the Third-Party Culpability Claim, Edwards asserts that he should have been able to introduce evidence regarding the July 10, 2001 attack on McMillan to demonstrate that McMillan had other enemies who could have committed the May 15, 2000 assault. The Court rejects both claims.

The Appellate Division found that the Trial Court had "improvidently precluded extrinsic evidence ... which was offered as evidence of bias," but that the error was harmless. Edwards, 829 N.Y.S.2d at 505.  The Appellate Division further determined that were it to find errors in Edwards's remaining claims regarding evidentiary rulings, it would deem such errors harmless.  Id.

A defendant's right to present a complete defense through the introduction of relevant evidence is not absolute.  See, e.g., Taylor v. Illinois, 484 U.S. 400, 411 (1988); Chambers v. Mississippi 410 U.S. 284, 302 (1973).  The right to present evidence "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)).  Likewise, though a defendant has a right, pursuant to the Confrontation Clause of the Sixth Amendment, to cross-examine the witnesses testifying against him to expose any possible biases or motives for testifying, "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 678-80 (1986); see also United States v. Holmes, 44 F.3d

1150, 1157 (2d Cir. 1995) (court "retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence").  A writ of habeas corpus should issue only where the petitioner can show that the alleged error deprived [him] of a fundamentally fair trial.  See Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983) (citing Chambers, 410 U.S. at 302-03).

As the Supreme Court has stated, when a defendant's constitutional rights have been violated due to trial error, habeas relief is warranted only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Fry v. Plilar, ___ U.S.___, 127 S.Ct. 2321 (2007).  In other words, it "must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)); see also Cummings v. Artuz, 237 F. Supp. 2d 475, 486-87 (S.D.N.Y. 2002).  On the record before this Court, it is clear that even if the Trial Court violated Edwards's due process and Confrontation Clause rights, Edwards has failed to meet the exacting standard required by Brecht.

The Court finds, consistent with the Appellate Division's determination of harmless error as to these claims, that admission of any erroneously excluded evidence pertaining to the Bias Claim or the Third-Party Culpability Claim would not have provided a basis for reasonable doubt that did not otherwise exist. With respect to the Bias Claim, significant other evidence was introduced at trial regarding the history of the relationship between McMillan and Edwards's sister through the testimony of various witnesses, from which the jury, to the extent pertinent to its verdict, could have inferred bias and motive on the part of McMillan. Because this information was available to the jury, the Court is not convinced that precluding Edwards from eliciting additional testimony regarding McMillan's alleged menacing of Edwards' sister, McMillan's arrest and subsequent ACD, and McMillan's gun ownership, would have had any substantial effect on the jury's decision. Regarding the Third-Party Culpability Claim, the Court is not persuaded that evidence pertaining to the July 10, 2001 assault on McMillan would have created reasonable doubt in the mind of the jury that Edwards was the assailant in the instant incident, as he was identified by both McMillan and Kairson.

Accordingly, because any errors with respect to the evidentiary rulings at issue here did not have a "substantial

and injurious effect or influence in determining the jury's verdict," Brecht, 507 U.S. at 638, Edwards's due process and Confrontation Clause claims are denied.

3.    In-Court Identification Procedure

Edwards asserts that the Trial Court's use of an unduly suggestive in-court identification procedure, in which Edwards was brought within six inches of McMillan following the announcement of Edwards's name, violated his due process right to a fair trial.  The Court finds this claim to be meritless.

The Appellate Division held that it had "considered and rejected [Edwards's] arguments concerning the manner in which the in-court identification was conducted," and that "[t]here was no prejudice to [Edwards], particularly in light of the fact that the victim had already made a reliable lineup identification." Edwards, 528 N.Y.S.2d at 505.  Because the Appellate Division's ruling on this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, Edwards is not entitled to relief. See 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 404-05 (2000).

The Court is not aware of any Supreme Court precedent specifying what circumstances would make an in-court identification procedure so suggestive as to violate due process, nor have the parties brought any such precedent to

the Court's attention.[9]  Moreover, courts in this Circuit have noted that "[f]ew cases directly have addressed whether circumstances surrounding an in-court identification can be considered impermissibly suggestive." Jones v. West, 473 F. Supp. 2d 390, 420 (W.D.N.Y. 2007) (quoting Bond v. Walker, 68 F. Supp. 2d 287, 298 (S.D.N.Y. 1999)).

The Second Circuit has directly ruled on the issue of in-court identifications, though it was upon direct review of a federal criminal prosecution. See United States v. Archibald, 734 F.2d 938, modified and reh'g denied, 756 F.2d 223 (2d Cir. 1984). In Archibald, the defendant requested that he "be seated with five or six other black men who looked reasonably like him, to ensure that he would not be obviously singled out by an educated witness," but the trial judge denied the request. Archibald, 734 F.2d at 941. The defendant subsequently appealed his conviction based, in part, on the grounds that "the in-court identifications were tainted

---

[9] The Supreme Court has provided guidance as to identification procedures in general, but not in the context of an in-court identification. In Manson v. Brathwaite, 432 U.S. 98 (1977) the Court stated that factors to be considered in assessing the reliability of a suggestive identification include: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the degree of certainty exhibited by the witness at the confrontation; and (5) the elapsed time between the occurrence of the crime and the confrontation. See id. at 114-16.  In this manner, a federal court considers the likelihood of misidentification caused by the suggestive procedure "to determine if [it] would sufficiently taint the trial so as to deprive the defendant of due process." Dunnigan, 137 F.3d at 128 (quoting United States v. Bouthot, 878 F.2d 1506, 1516 (1st Cir. 1989)) (internal quotations omitted).

by unduly suggestive circumstances, namely, that throughout the trial [defendant] was the only black person in the courtroom, except for one day when a black United States Marshal was present, and that he was seated at the defense table." In its modified opinion, the Second Circuit held that with respect to in-court identifications

> special procedures are necessary only where (1) identification is a contested issue; (2) the defendant has moved in a timely manner prior to trial for a lineup; and (3) despite that defense request, the witness has not had an opportunity to view a fair out-of-court lineup prior to his trial testimony or ruling on the fairness of the out-of-court lineup has been reserved.

Archibald, 756 F.2d at 223.

District courts in this Circuit have questioned whether Archibald, decided on direct appeal of a federal criminal conviction, is applicable to habeas corpus review of a state court conviction. See, e.g., Jones, 473 F. Supp. 2d at 421; Bond, 68 F. Supp. 2d at 300-01. Yet, even applying the standard set forth in Archibald, while taking into account the Supreme Court's principles for assessing the reliability of identification procedures generally in Manson, Edwards is not entitled to habeas relief on this issue. Edwards participated in a reliable out-of-court lineup prior to trial, in which McMillan identified Edwards as his assailant from among five other men. Thus, under Archibald, Edwards was not entitled to

any "special procedures" for his in-court identification.  See Archibald, 756 F.2d at 223.[10]

    4.   Excessive Sentence

    Finally, Edwards claims that his sentence should be reduced in the interest of justice.  To the extent that this claim relies on state-law principles, it is not cognizable on federal habeas review.  See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

    To the extent that Edwards also presents a federal claim that his sentence violates his Eighth Amendment right to be free from cruel and unusual punishment, the Court finds this claim to be unexhausted.  The federal constitutional basis for the excessive-sentence claim was not "fairly presented" to the state courts on direct appeal.  See Fama, 235 F.3d at 808 (quoting Picard, 404 U.S. at 275).  Edwards's Appellate Division brief presented his excessive-sentence claim in terms of state law, invoking the power of a state appellate court to

---

[10] Additionally, the jury observed the manner in which the identification procedure was conducted, and could assign the identification whatever weight it deemed appropriate.  See Manson, 432 U.S. at 116 ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature").  Considering the circumstances, and, in particular, McMillan's reliable positive identification of Edwards prior to trial, the Court finds that the in-court identification procedure did not "taint the trial so as to deprive the defendant of due process."  Dunnigan, 137 F.3d at 128 (quoting Bouthot, 878 F.2d at 1516) (internal quotation marks omitted).

reduce sentences in the interest of justice under CPL §
470.15(6)(b).  This Court and other courts in this district
have found that a prisoner's reliance on a state procedural
law granting courts discretionary authority to reduce
sentences does not "fairly present" a federal constitutional
claim in state court.  See, e.g., Acosta v. Giambruno, 326 F.
Supp. 2d 513, 521-22 (S.D.N.Y. 2004); Grant v. Berbary, No. 99
Civ. 12017, 2002 WL 33985139, at *3 n.3 (S.D.N.Y. Jan. 18,
2002); Castillo v. Abrams, No. 88 Civ. 1165, 1988 WL 96026, at
*2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its
discretionary authority to reduce a sentence [under CPL §
470.15(2)(c) and 3(c)], without more, is not enough to alert
the court that the claim is of constitutional dimension.").
Moreover, Edwards did not seek leave to appeal to the New York
Court of Appeals on the ground that his sentence was
excessive.  Therefore, his Eighth Amendment claims are
unexhausted and not cognizable on habeas review.

    Furthermore, "no federal constitutional issue is
presented where, as here, the sentence is within the range
prescribed by state law." White v. Keane, 969 F.2d 1381, 1383
(2d Cir. 1992).  Issues of sentencing rationales and ranges
are "generally a policy choice to be made by state
legislatures, not federal courts." Ewing v. California, 538
U.S. 11, 25 (2003).  Accordingly, "a reviewing court rarely

-28-

will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate" because "the decision of a sentencing [court] is entitled to substantial deference."  United States v. Persico, 853 F.2d 134, 138 (2d Cir. 1988) (citations omitted); see also Hemphill v. Senkowski, No. 02 Civ. 7093, 2004 WL 943567, at *11 (S.D.N.Y. May 3, 2004).[11]

Edwards was convicted of Assault in the First Degree, which is a Class B violent felony under New York Penal Law § 120.10(1).  As a result, Edwards could have received a determinate sentence of between five and twenty-five years of imprisonment.  Edwards's sentence of a determinate term of imprisonment of fifteen years, which was reduced from the twenty-five-year term set by the sentencing court, falls squarely within the range prescribed by New York law and therefore poses no federal constitutional violation.

---

[11]  In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court acknowledged that "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow"; yet, the Supreme Court concluded that it has been "clearly established" by the Supreme Court that "a gross disproportionality principle is applicable to sentences for terms of years." Id. at 72.  Edwards's sentence of fifteen years of imprisonment for a first degree assault does not remotely approach the realm of grossly disproportionate punishments. See id. at 67-68, 77 (upholding California appellate court's finding that, under California's three strikes law, two sentences of twenty-five years to life imprisonment for two counts of petty theft were constitutional under Eighth Amendment); Harmelin v. Michigan, 501 U.S. 957, 1001-04 (Kennedy, J., concurring in part and concurring in judgment) (stating that sentence of life in prison without parole for possession of more than 650 grams of cocaine did not violate Eighth Amendment's protection against grossly disproportionate sentences).

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Court's Order dated September 23, 2008 is amended to incorporate the discussion and decision set forth above; and it is

**ORDERED** that the petition (Docket No. 1) of Eric Edwards ("Edwards") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED in its entirety.

Because Edwards has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.   See 28 U.S.C. § 2253(c); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           25 November 2008

Victor Marrero
U.S.D.J.

-30-

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: //  //  ( 9